Doc # 1

09 MAG          729 ORIGINAL

U.S. DISTRICT COURT
FILED

MAR 17 2009

S.D. OF N.Y.

Approved: _____
LISA A. BARONI / MARC LITT
Assistant United States Attorneys

Before:   HONORABLE THEODORE H. KATZ
          United States Magistrate Judge
          Southern District of New York

------------------------------------x

UNITED STATES OF AMERICA            :

       - v. -                       :

DAVID G. FRIEHLING,                 :

                                    :

       Defendant.

                                    :

------------------------------------x

SEALED
COMPLAINT

Violations of
15 U.S.C. §§ 78j(b),
78q(e), 78ff, 80b-6,
80b-17; 17 C.F.R. §
240.10b-5
240.17a-5,
240.17a-13, 210.2-
01; 18 U.S.C. § 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

       KEITH D. KELLY, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

## COUNT ONE
(Securities Fraud)

       1.  From at least the early 1990s, through on or about
December 11, 2008, in the Southern District of New York and
elsewhere, DAVID G. FRIEHLING, the defendant, unlawfully,
wilfully and knowingly, by the use of the means and
instrumentalities of interstate commerce and of the mails,
directly and indirectly, in connection with the purchase and sale
of securities, did use and employ manipulative and deceptive
devices and contrivances in violation of Title 17, Code of
Federal Regulations, Section 240.10b-5, by (a) employing devices,
schemes, and artifices to defraud; (b) making untrue statements
of material facts and omitting to state material facts necessary
in order to make the statements made, in the light of the
circumstances under which they were made, not misleading, and (c)
engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon persons, to
wit, FRIEHLING deceived investors by creating false and
fraudulent certified financial statements for Bernard L. Madoff
Investment Securities LLC, and its predecessor, Bernard L. Madoff
Investment Securities (collectively and separately, "BLMIS"), and

causing those certified financial statements to be filed with the
United States Securities and Exchange Commission (the "SEC") and
sent to BLMIS clients.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

## COUNT TWO
(Investment Adviser Fraud)

2.   From at least the 1990s, through on or about
December 11, 2008, in the Southern District of New York and
elsewhere, DAVID G. FRIEHLING, the defendant, unlawfully,
willfully, and knowingly, by the use of the mails and means and
instrumentalities of interstate commerce, directly and
indirectly, did aid and abet Bernard L. Madoff, who was acting as
an investment adviser with respect to clients and potential to ⟵ (UMB)
clients of Bernard L. Madoff Investment Securities, ~~and did~~ (a)
employ devices, schemes, and artifices to defraud clients and
prospective clients; (b) engage in transactions, practices, and
courses of business which operated as a fraud and deceit upon
clients and prospective clients; and (c) engage in acts,
practices, and courses of business that were fraudulent,
deceptive, and manipulative.

(Title 15, United States Code, Sections 80b-6 and 80b-17;
Title 18, United States Code, Section 2.)

## COUNTS THREE THROUGH SIX
(False Filings With The Securities And Exchange Commission)

3.   On or about the dates set forth below, in the
Southern District of New York and elsewhere, DAVID G. FRIEHLING,
the defendant, unlawfully, willfully, and knowingly, in
applications, reports, and documents required to be filed with
the SEC under the Securities Exchange Act of 1934, and the rules
and regulations thereunder, did make and cause to be made
statements that were false and misleading with respect to
material facts, to wit, FRIEHLING caused false and misleading
certified Bernard L. Madoff Investment Securities audit reports
to be filed with the SEC.

2

| Count | Approximate Date of Filing |
|-------|----------------------------|
| THREE | December 14, 2004 |
| FOUR | December 30, 2005 |
| FIVE | December 22, 2006 |
| SIX | December 20, 2007 |

(Title 15, United States Code, Sections 78q(e) and 78ff; Title 17, Code of Federal Regulations, Sections 240.17a-5, 240.17a-13 and 210.2-01; Title 18, United States Code, Section 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4.   I have been a Special Agent with the FBI for more than 25 years, and I have been personally involved in the investigation of this matter.  I have a B.B.A. in accounting from Emory University.  From approximately 1983 until 2004, I had an active license in the State of Georgia as a Certified Public Accountant.  Since approximately 2004, my license has been inactive.  Prior to becoming a Special Agent with the FBI, I worked for Arthur Andersen LLP where I participated in audits of public corporations.  Moreover, I have experience investigating securities fraud and other financial fraud cases.

5.   The information contained in this Complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; and (b) my review of numerous documents including but not limited to documents of BLMIS and Friehling & Horowitz, CPAs, P.C. ("F&H").  Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include every fact that I have learned during the course of the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Relevant Parties

6.   At all times relevant to this Complaint, BLMIS had its principal place of business in New York, New York, most recently at 885 Third Avenue, New York, New York.  BLMIS was a broker-dealer that engaged in three principal types of business:

3

market making; proprietary trading; and investment advisory services. BLMIS was registered with the SEC as a broker-dealer and was, beginning in or about 2006, registered with the SEC as an investment adviser.

7. Bernard L. Madoff was the founder of BLMIS, and served as its sole member and principal. In that capacity, Madoff controlled the business activities of BLMIS. On March 12, 2009, in connection with his scheme to conduct a massive Ponzi scheme through BLMIS, Madoff pleaded guilty to securities fraud, investment adviser fraud, mail fraud, wire fraud, two counts of international money laundering, money laundering, false statements, perjury, false filings with the SEC, and theft from an employee benefit plan. Among other things, Madoff admitted that despite his promises to clients and prospective clients that he would invest their money in shares of common stock, options, and other securities of well known corporations, he in fact never invested those clients' funds in the securities as he had promised.

8. DAVID G. FRIEHLING, the defendant, is licensed in the State of New York as a Certified Public Accountant ("CPA"), a member of the American Institute of Certified Public Accountants ("AICPA"), and is the sole practitioner at F&H. From 1991 through 2008, F&H was the accounting firm retained by BLMIS purportedly to audit BLMIS's financial statements. FRIEHLING created BLMIS's certified and purportedly audited financial statements, including balance sheets, statements of income, statements of cash flows, and reports on internal control. Those financial statements were filed with SEC and were sent to clients of BLMIS. FRIEHLING was paid between approximately $12,000 and $14,500 per month by BLMIS for his services between 2004 and 2007.

## Auditing Standards and Principles

9. Under the Generally Accepted Auditing Standards ("GAAS"), an auditor must obtain "sufficient appropriate audit evidence by performing audit procedures to afford a reasonable basis for an opinion regarding the financial statements under audit." AICPA Professional Standards, Auditing (hereinafter "AU") Section 326.01. Moreover, "[t]he auditor should use professional judgment and should exercise professional skepticism in evaluating the quantity and quality of audit evidence, and thus its sufficiency and appropriateness, to support the audit opinion." AU Section 326.13. Therefore, analyzing audit evidence is a fundamental part of an audit; if an auditor fails appropriately to test and verify a client's transactions,

4

ownership and custody of assets, and account balances, the audit is rendered virtually meaningless.

10. Auditing standards also require the preparation of audit documentation in order to allow another auditor, unfamiliar with the engagement, to understand the "nature, timing, and extent of auditing procedures performed," the "results of the audit procedures," and the "conclusions reached on significant matters." AU Section 339.10.

11. Auditing standards also require that an auditor be independent; that is, an auditor "must be free from any obligation to or interest in the client, its management, or its owners." AU Section 220.03; see also AICPA Code of Professional Conduct, ET Section 101.

### SEC Requirements

12. Under SEC regulations, a broker-dealer registered with the SEC is required to file an annual report, including financial statements and related disclosures, with the SEC. Under Title 17, Code of Federal Regulations, Section 240.17a-5, the financial statements are required to be accompanied by an independent auditor's report addressing both the presentation of the financial statements as well as any material inadequacies in the broker-dealer's internal controls. Under Title 17, Code of Federal Regulation, Section 240.17a-5, the audit of a registered broker-dealer must be sufficient to enable the auditor to express an opinion upon, among other things, the broker-dealer's computation of net capital and customer reserve requirements.

13. Under Title 17, Code of Federal Regulations, Section 240.17a-5(f)(3), the accountant must be independent in accordance with the provisions of Title 17, Code of Federal Regulations, Section 210.2-01(b) & (c). Under that provision, an accountant's independence is impaired when an accountant, or an accountant's immediate family member, has "[b]rokerage or similar accounts maintained with a broker-dealer that is an audit client, if . . . [t]he value of assets in the accounts exceeds the amount that is subject to a Securities Investor Protection Corporation ["SIPC"] advance, for those accounts, under Section 9 of SIPA (15 U.S.C. § 78fff-3)."

14. Under Title 15, United States Code, Section 78fff-3(a), advances from SIPC are limited to a maximum of $500,000 to each customer.

5

<u>FRIEHLING's Failure To Conduct Meaningful Audits</u>

15.    Other FBI agents and I have reviewed the audit
work papers maintained by F&H, for the time period 2000 to 2008,
as well as audit documents maintained at BLMIS, for the time
period 1998 to 2008 (collectively, the "F&H Audit Workpapers").
Based on my training and experience, those work papers are
inadequate to support the findings contained in the audited
financial statements of BLMIS certified by DAVID G. FRIEHLING,
the defendant.  Specifically, based on my training and
experience, the F&H Audit Workpapers reflected insufficient
independent verification of the information provided to FRIEHLING
by employees of BLMIS.  Among other things, those F&H Audit
Workpapers did not include documentation that FRIEHLING had done
any of the following: (a) conducted independent verification of
BLMIS assets; (b) reviewed material sources of BLMIS revenue,
including commissions; (c) examined a bank account through which
billions of dollars of BLMIS client funds flowed; (d) verified
liabilities related to BLMIS client accounts; or (e) verified the
purchase and custody of securities by BLMIS.

16.    Other FBI agents and I have spoken to numerous
employees of BLMIS who were responsible for the receipt and
disbursement of BLMIS funds, including client funds.  Based on
information provided in those interviews, I believe that DAVID G.
FRIEHLING, the defendant, did not conduct a meaningful audit
under the required GAAS standards or in conformity with Generally
Accepted Accounting Principles ("GAAP").  On the basis of my
training and experience, I am familiar with the types of
inquiries and requests for back-up documentation that an auditor
typically must make in a GAAP- and GAAS-compliant audit.  The
BLMIS employees informed me, and other FBI agents, that FRIEHLING
did not request these back-up documents or make these inquiries.

17.    On the basis of the numerous interviews that I and
other FBI agents have conducted of employees of BLMIS, as well as
my review of the F&H Audit Workpapers, and on the basis of my
training and experience, I believe that the audit conducted by
DAVID G. FRIEHLING, the defendant, also failed to test internal
controls as required under GAAP and GAAS standards.  For example,
FRIEHLING did not take any steps to test internal controls over
areas such as: BLMIS's redemption of client funds, the payment of
invoices for corporate expenses, or the purchase of securities by
BLMIS on behalf of its clients.

18.    In addition, the AICPA requires that accountants
who are members and who perform audits must undergo a peer review
process, which includes a review of audit work papers.  I have

6

reviewed certain documents obtained from the AICPA; those
documents reflect that, each year from at least 1994, through and
including 2008, while he was certifying to the SEC that he was
performing annual audits of BLMIS in conformity with GAAS and
GAAP, DAVID G. FRIEHLING, the defendant, represented to the AICPA
that he did not perform any audits, thereby avoiding the peer
review process.

### Dissemination Of Audited Financial Statements

19. For each year for which he prepared financial
statements for BLMIS, DAVID G. FRIEHLING, the defendant, included
an Independent Auditor's Report ("Report"). In each such Report,
FRIEHLING acknowledged that BLMIS would file the accompanying
Statement of Financial Condition with the SEC pursuant to Rule
17a-5 of the Securities and Exchange Act of 1934. In each such
Report accompanying BLMIS's financial statements, FRIEHLING also
falsely stated that "we conducted our audit in accordance with
auditing standards generally accepted in the United States of
America," when in fact he had not. FRIEHLING also falsely stated
that the audit "include[d] examining, on a test basis, evidence
supporting the amounts and disclosures in the financial
statements," when in fact, no such examination ever took place.

20. Moreover, under Title 17, Code of Federal
Regulation, Sections 240.17a-5(c)(2) & (d), a broker-dealer must
furnish audited financial statements to its customers. Title 17,
Code of Federal Regulation, Section 240.17a-5(c)(4)(iii) defines
a "customer" as "any person for whom the broker or dealer holds
securities for safekeeping or as collateral or for whom the
broker or dealer carries a free credit balance in the month in
which customers are determined for purposes of" this section.

21. Other FBI agents and I have interviewed two BLMIS
employees who stated that the Statement of Financial Condition,
including the Report, were specially printed and regularly sent
to BLMIS clients upon their request.

### FRIEHLING's Lack Of Independence

22. In the BLMIS financial statements prepared by
DAVID G. FRIEHLING, the defendant, from in or about the early
1990s to 2008, FRIEHLING certified that the statements were
prepared on the basis of audits conducted pursuant to GAAS.
FRIEHLING also certified that the financial statements of BLMIS
were presented in conformity with GAAP. Those certifications
were false because, among other things, FRIEHLING did not meet
the independent auditor standard set forth in Paragraph 11 above.

7

23. According to BLMIS records that I have reviewed, DAVID G. FRIEHLING, the defendant, and/or his wife, has had an account at BLMIS from the early 1980s to the present (the "FRIEHLING Account"). At the end of each year, between at least as far back as 1995 and 2007, the FRIEHLING Account had an equity balance in excess of $500,000.

WHEREFORE, deponent prays that DAVID G. FRIEHLING, the defendant, be imprisoned, or bailed, as the case may be.

KEITH D. KELLY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
17th day of March 2009

HONORABLE THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8